## George R. Gardner *et al. versus* Frederick Hoeg and Trustees.

The *lay* or share in the profits of the voyage, which a seaman in a whaling ship receives, according to a custom, in lieu of wages, is assignable before the commencement of such voyage.

Where a seaman, in a whaling ship, by his deed purporting to be for the consideration of $ 800, assigned his *lay* before the commencement of the voyage, but the assignee paid him no money at the time, but agreed to advance money for his use before and during the voyage, and made advances accordingly, and upon the assignor's return rendered him an account thereof, in which he was credited with the sum of $ 800 for his lay, with which account he was satisfied, it was *held*, that such assignment was valid as against the plaintiff, a creditor of such seaman at the time of the assignment, although no notice of the assignment had been given to the owners of the vessel, until after the termination of the voyage, and just before such *lay* was attached in their hands by the plaintiff.

THE answer of Daniel Jones, one of the supposed trustees, set forth, that he was the agent of the owners of the whaling ship Spartan, the supposed trustees, and was also a part-owner; that the defendant was the cooper of the ship, and performed a voyage in her; that his share or *lay*, which was one forty-fifth, amounted to $ 1185·11 ; and that advances were made to the defendant by the owners, amounting to $ 712·50. The answer then discloses an assignment under seal, by the defendant, of the whole of his lay, to Thomas Coffin.

By this assignment, which was dated November 19th, 1831, the defendant, in consideration of the sum of $ 800, assigned and transferred to Coffin the whole of the voyage, share or lay, which the defendant should obtain as cooper and mariner of the Spartan during her intended voyage, to be paid to such assignee at the termination of the voyage, covenanted with the assignee that he should receive all which the assignor might obtain, and requested the captain, agent, and owners, to deliver his voyage to the assignee upon the arrival of the ship.

The assignee came in, under the statute, to support the assignment, and claimed the balance in the hands of the supposed trustees. The plaintiff denied the validity of the assignment upon two grounds 1. That an assignment of the whole of a seaman's future earnings was void as against public policy; and, 2. That the assignment in question being intended, and

having a tendency to defeat, defraud, and delay the creditors of the assignor, was void as against the plaintiffs, who were creditors before the assignment was made.

At the trial, before *Shaw* C. J., it appeared, that no money was paid to the defendant by the assignee at the time when the assignment was made, but that the assignee agreed to let him have some money before he sailed, and to supply his family during his absence ; that this was done by the assignee ; that after the defendant's return an account was rendered to him by the assignee, in which the defendant was credited with the sum of $800 for his lay, and charged with various advances and supplies, with which account he was satisfied ; that the assignee did not communicate this assignment to the owners, cr apply to them to accept it, till after the return of the ship, and but a short time before the trustee process was served.

Judgment was to be entered according as the Court should be of opinion, that the trustees ought to be charged or discharged.

The case was argued in writing.

*Eddy* and *Warren*, for the plaintiffs. We contend, that the contract between the assignee and the defendant was a void contract at the time, that it could not be enforced, on the consummation of the voyage, against any person except the defendant, (if against him,) and that the assignee could not, by virtue of it, claim the lay against the owners of the vessel, nor against the creditors of the defendant. The contract was void as against public policy and the well established principles of the common law. Com. Dig. *Assignment, C* 3, and *Grant, D* ; Perk. *Grant,* 65 ; *Flarty* v. *Odlum,* 3 T. R. 681 ; *Lidderdale* v. *Montrose,* 4 T. R. 248 ; *Cooper* v. *Reilly,* 1 Russ. & Mylne, 560.

If this assignment had been assented to by the owners, the case would be very different. It would then come within the spirit of the decisions in *Fitch* v. *Fitch,* 8 Pick. 480 ; *Clark* v. *Adair,* cited in *Master* v. *Miller,* 4 T. R. 343 ; *Cutts* v *Perkins,* 12 Mass. R. 206 ; *Crocker* v. *Whitney,* 10 Mass. R. 319.

In the present case, the defendant had agreed to perform this voyage, and to have a certain portion of the earnings of the

Gardner
v.
Hoeg and
Trs.

vessel. This manner of rewarding the seaman is very impor tant to the owners. It is essentially necessary to the prosperity of these enterprises, that all the seamen should have an interest in the success of the voyage. The ardor, enterprise, promptitude, and diligence, which are requisite to success, could not be secured by *mere wages*. It is, therefore, a fraud upon the owners, for a stranger to step in secretly and agree with a seaman to give him wages, or a sum certain, instead of his lay. So it would be injurious to the interests of creditors, if debtors might make assignments of the avails of their future labor.

*T. G. Coffin*, for the trustees.

*July 2d, at
Nantucket.*

PUTNAM J. delivered the opinion of the Court. There is a sufficient subject to which the contract was to attach. It is a chose in action, always assignable in equity for good consideration, and courts of law at this day protect the rights of the assignee. He may sue in the name of the assignor, and if the assignor discharge the debtor who has notice of the assignment, it shall not prejudice the claim of the assignee. The possibility of a term is assignable upon good consideration. *Theobald* v. *Duffay*, (in House of Lords, March 1729 – 30.) 1 P. Wms. 574, note. It is analogous to the *spei emptio* ; the draught of the net, which by the civil law might be assigned. *Macomber* v. *Parker*, 14 Pick. 505. The assignor had, by the shipping articles, an inchoate right to a distributive share of the oil upon the making up the account at the end of the voyage ; and we think it was a subject matter for a valid sale, notwithstanding it was a thing which existed in expectation, and not in *esse*, at the time.

We doubt very much the expediency of such sales or assignments ; for so far as the ultimate success of the voyage is concerned, it is very clear, that if *all* the seamen were to have neither more nor less at the end of it, or in other words, if the compensation were not according to the amount to be divided at the winding up of the voyage, the great stimulus to individual exertion would be removed. And it is upon that principle, that the seaman is not permitted by law to insure his wages. There may, on the other hand, be some reasons of convenience almost amounting to necessity, which call for such an arrangement. However this may be, until the legislature shall

make some regulations upon this matter, the Court, we think, ought not to interfere on the ground of public policy.

By *St.* 1 *Geo.* 2, *c.* 14, § 7, every bargain, sale, bill of sale, contract, and agreement whatever, of, for, or concerning any pay, wages, or allowance due or to grow due to any seaman or seamen in the *service of His Majesty*, for such service, is declared void and of no effect. Com. Dig. *Chancery*, 2 *H.* About twenty years before that statute it was held, in *Crouch* v. *Martin*, 2 Vern. 595, that the assignment of wages by a seaman was a valid contract. The *St.* 1 *Geo.* 2, before cited, regulated this subject so far only as it concerned His Majesty's service, and did not alter the law as before held, touching the merchant service. And by *St.* 20 *Geo.* 2, *c.* 24, bills of sale of prizes before condemnation, are declared void. *Morrough* v. *Comyns*, 1 Wils. 213.

The half pay of officers is not assignable for reasons of public policy. Such emoluments are granted for the dignity of the state and for the support of the officers. *Flarty* v. *Odlum*, 3 T. R. 682.

The question of fraudulent intent was waived by the parties, except so far as it might be the conclusion of law upon the facts found. And we all think that no legal inference of fraud can be made from the facts which are in the case.

When the assignment was made there was a promise on the part of the assignee to advance money to the assignor before he sailed, and to make supplies to his family, which promise was fulfilled, and the transaction was according to the known usage at Nantucket; which we cannot say is illegal, though we doubt somewhat of its expediency; and notice of the assignment was given to the owners before the trustee process was served.

Upon the whole, we are all of opinion that the assignment was valid, and that the trustees must be discharged.